UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-22605-Civ-Martinez

YALE MORTGAGE CORPORATION,

       Plaintiff,

vs.

WELLS FARGO BANK, N.A.,

       Defendant,
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL (DE 77)**

    Plaintiff, Yale Mortgage Company ("Yale"), hereby responds to the Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial (DE 77) filed by Defendant Wells Fargo Bank, N.A. (Wells Fargo). Wells Fargo's requests that this Court sit as the "ninth juror" and rule in Wells Fargo's favor, or that it give Wells Fargo a "do-over" after the five day trial did not end to Wells Fargo's liking, should both be denied.

    **I. THE EVIDENCE AT TRIAL SUPPORTED THE JURY'S FINDING THAT WELLS FARGO OVERCHARGED YALE AND THEREFORE BREACHED THE PARTIES' CONTRACT.**

    As Wells Fargo acknowledges, the jury ruled that Wells Fargo's assessment of an "additional servicing fee" or " servicing delta" on Yale was a breach of the

parties' agreement. The standard of review for attacks on jury verdicts resolving factual questions is very narrow and restricted. Judgment as a matter of law is appropriate only if the facts and inferences point overwhelmingly in favor of one party, so that no reasonable people could arrive at a contrary verdict. *Combs v. Plantation Patterns, Inc.,* 106 F.3d 1519, 1526 (11th Cir. 1997). Further, under Rule 50, this Court disregards all evidence favorable to the party seeking judgment as a matter of law that the jury was not required to believe, and considers all evidence and draws all inferences in favor of the prevailing party. *Mee Indust. v. Dow Chem. Co.,* 608 F.3d 1202, 1210-11 (11th Cir. 2010). Taking all inferences in favor of the jury verdict, there was more than enough evidence presented by the plaintiff to prevent the jury's verdict from being challenged by Wells Fargo.

Wells Fargo does not cite any authority to suggest that the dispute in this case should have been resolved as a matter of law in its favor. Indeed, the parties were in agreement on the law, as stated in the Court's jury instructions, to the effect that the only justification for the disputed "servicing delta" was the contractual provision entitling Wells Fargo to recover the "costs" of a "servicing transfer" (DE 69). Contrary to Wells Fargo's argument, the Court on motion for summary judgment did **not** rule that Wells Fargo was entitled to prevail. Instead, the Court very clearly ruled that Wells Fargo was entitled to prevail **if and only if** it proved that it had set off the correct amount as "cost associated with the transfer

2

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

of servicing." DE 236 at 7-8 (Wells Fargo can recover "costs associated with transfer of servicing" even if incurred over a period of more than ninety days, or are of a type of cost not specifically listed in the PSA). The issue at trial (as the court instructed the jury, without objection from Defendant, e.g., DE 69 at page 10) was whether the amounts Wells Fargo paid itself were in fact the right amount of "costs associated with the transfer of servicing."

This issue – the amount of the costs, if any, suffered by Wells Fargo in "transfer of servicing" from Yale – was a factual issue, not one subject to motion for summary judgment, and indeed, Wells Fargo did not even file such a motion for summary judgment. Furthermore, in response to Yale's own motion for summary judgment[1], Wells Fargo opposed the motion (rather than filing a cross-motion) by arguing, DE 27 at page 1, that "the record contains disputed issues of material fact." Wells Fargo's current, and newly-minted position should be rejected by the Court.

Evidence as to the meaning of the disputed contractual provisions was offered by all three Yale witnesses (in most cases without objection), each of whom testified that Wells Fargo had paid itself more than the contract allowed. There was record evidence that the contract contemplated only one invoice, to be

---

[1] While Plaintiff might believe that its motion was well-taken, the Court denied it, and any issue with respect to that decision was mooted by the jury's verdict in favor of the plaintiff on the contract interpretation issue.

3

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

sent shortly after transfer of servicing was completed, and covering transitional costs only. Wells Fargo sent one such invoice, but continued thereafter to set off month after month, for the next three years, an "additional servicing fee" in a suspiciously round number, based on its desired price for servicing as of the time of default. The facts at this juncture must be taken in the light most favorable to the plaintiff and the jury verdict.

The Court properly rejected Wells Fargo's motion the first time, at trial (DE 78-2 at page 149-150). As the Court stated on the record in denying the Wells Fargo motion for directed verdict, the jury was within its rights to find that the so-called "servicing delta" was arbitrary, unjustified, and not within the contemplation of the contract. While the Court accepted the validity of recoupment as a concept, the Court also correctly ruled, "if they [plaintiff] disagree as to the reasonableness or whether this is a cost of transfer, they have a right to sue you to get it back. And that's what they're doing." The Court also found, "I think there are issues of fact" and noted, prophetically, that "I think that they [plaintiff] may very well, they may very well prevail in the minds of the jury that this is not contemplated by the parties and it was not mentioned and it was not discussed, it was arbitrary. What if the servicing delta was boosted to 72%? I mean could you do that?" *Id*. The Court should maintain its position, which is consistent with what the law requires.

The Court may also deny the Wells Fargo motion for a second reason, based

on the insufficiency of Wells Fargo's own case after denial of its motion for directed verdict. The jury would be able to rule as it did not just based on a finding that the claim of Wells Fargo did not relate to the "servicing **transfer**", but also because Wells Fargo failed to produce any evidence of its "costs" at all. If this were the breach of contract case that Wells Fargo **could have** filed in 2009, and the same evidence were offered, a directed verdict probably would have been granted against Wells Fargo's claim for damages. That is the same exact situation the jury in this case faced. Wells Fargo presented **no documentation** to justify the one-half percent servicing delta which it imposed on Yale, nor did its witnesses provide **any information** about the personnel, labor, or equipment spent on the servicing transfer, or even on servicing in general. The jury could well have ruled for the plaintiff on the finding that Wells Fargo produced **no evidence** of the amount of "costs," expenses, or damage it suffered due to Yale's default. As the jury was fully within its rights to reject Wells Fargo's case for lack of proof, Wells Fargo's current motion must be denied.

5

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com        www.coffeyburlington.com

## II. YALE'S BREACH OF THE PSA IS NOT A COMPLETE DEFENSE, AND EVIDENCE SUPPORTED THE JURY'S DECISION THAT YALE'S DAMAGES AWARD SHOULD NOT BE OFF-SET BY YALE'S BREACH.

As the Court's jury instructions correctly stated, Wells Fargo was only entitled to recover its "costs" of servicing transfer in the event of Yale's default. Wells Fargo did not offer any evidence or argument that it was entitled to anything other than costs associated with a servicing transfer. This was the very issue resolved on the plaintiff's case. While the Court did include in the verdict form a question asking whether Yale caused additional damage to Wells Fargo, this was in fact a decision favorable to Wells Fargo. The contract already provided the sole remedy to Wells Fargo – a right to recover the costs of servicing transfer – and the jury properly concluded that Wells Fargo had no right to any other form of damage or relief. This was the very interpretation testified to by all three of plaintiff's witnesses, and the jury was free to resolve any conflict in the evidence in plaintiff's favor.

Wells Fargo's argument that there should be any relationship or identity between the amount it overcharged and the amount of its actual damages ( DE 77 at 15) is simply nonsense. These are two separate and indeed opposite concepts. The jury was not required to accept the internal agreement between two different divisions of Wells Fargo as a measure of actual damages. That agreement could

COFFEY BURLINGTON
OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

have been regarded either as a meaningless sham, an unexplained document (since no one from Home Mortgage explained or addressed it), or simply a reflection of the post-crash pricing of Home Mortgage in 2009, which is not a "cost" of "transfer of servicing" under the PSA.

For reasons stated above, the jury was well within its rights in finding that Wells Fargo suffered no compensable damage, as allowed by the contract. There was no mystery or inconsistency in the answers to questions 3 and 4 of the verdict form. Question 3 probably means that Wells Fargo was damaged by Yale's breach in the amounts *properly withheld,* approximately $100,000 as billed for actual transition costs by Wells Fargo. In answering question 4, the jury quite sensibly found zero damages; what Wells Fargo had already paid itself was not damages, and the only reasonable interpretation of the verdict form would be that proper charges should not reduce the overcharges that Wells Fargo imposed. The jury ruled the only way that it reasonably could. Alternatively, the jury may well have ruled as it did based on lack of proof by Wells Fargo of any damage or harm. Wells Fargo simply offered no proof to **quantify** the amount of damages for the jury. Third, the jury could have simply concluded that these questions were duplicates of the earlier questions on which it had already properly ruled for Yale. Again, at worst, the evidence on Question 4 was in dispute and the jury verdict on the disputed factual issue must stand.

7

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

### III. THE TESTIMONY OF PIOTROWSKI AND KAHN WAS APPROPRIATELY ALLOWED BY THE COURT AND THERE IS NO BASIS FOR A NEW TRIAL.

Rulings on the admission of evidence are within the discretion of the Court. E.g., *United States v. Lebowitz,* 676 F.3d 1000, 1009 (11th Cir. 2012). As this was a case where the meaning and proper application of the contract were challenged, each party necessarily was allowed to state its own understanding of the proper meaning and application of the contract. Both Yale and Wells Fargo offered such evidence, in most cases without objection. Wells Fargo can cite no authority to the effect that each party in a breach of contract dispute cannot state its own interpretation of the contract. Notably, as mentioned above, Wells Fargo did not even move for summary judgment on its own interpretation of the contract but argued that the contract presented issues of fact for the jury.

Nor did Wells Fargo ask for an instruction to the effect that the contract was "unambiguous"; instead, Wells Fargo submitted jury instructions relating to **disputed** contract interpretation, DE 47 at page 22, 23, and did not object to the Court's ultimate instruction on the contractual dispute, DE 69 at page 8 ("the parties have placed different interpretations on the contract" and describing factors to consider in resolving dispute as to interpretation). The Court presided over a trial which fairly addressed the issues identified by the parties in their pleadings and legal positions. The Court's evenhanded treatment of this issue, which

8

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

allowed both parties to present evidence on the disputed issues, was fair, proper, and certainly not an abuse of discretion.

As to Mr. Piotrowski, the court's ruling was expressly based on cases on point which allowed testimony of usage of trade from witnesses with knowledge of the industry. DE 78-1 at pages 78-79; 111-12. *Dakota Minn. & E. R. Corp., v. Wisconsin & S. R.Corp.,*, 657 F.3d 615, 619 (7th Cir. 2011)("evidence of trade usage" need not "take the form of expert evidence; any management-level employee of a business engaged in a particular trade should be familiar with the meaning of words used in that trade, and thus fit the definition of a lay witness entitled to give opinion evidence"); *Tampa Bay Shipbldg. Co. v. Cedar Bay Shipping Co.*, 320 F.3d 1213, 1216-23 (11th Cir. 2003)(allowing lay opinion testimony on whether charges were reasonable and rejecting argument that expert disclosure was mandated). Following circuit cases on point can hardly be an abuse of discretion[2]. There was certainly no prejudice to Wells Fargo as Yale

---

[2] The cases cited by Wells Fargo suggest that an expert may address custom and usage issues but do not contradict the Eleventh Circuit and Seventh Circuit authority that a qualified lay witness can also address the issues. The situation is no different from a medical malpractice or legal malpractice case where a non-expert fact witness doctor or lawyer would be allowed to explain medical or legal terms for the jury. Moreover, while not necessary, Plaintiff substantially complied even with the requirements for expert disclosure in this case, where Piotrowski was disclosed in Initial Disclosures and a signed affidavit with his testimony was filed of record. There was no issue of surprise; Wells Fargo simply allowed his testimony to be uncontradicted.

provided an affidavit of Mr. Piotrowski in interrogatory answers and in summary judgment briefing. Of course, Mr. Piotrowski was identified in Yale's Initial Disclosures at the inception of the case. Wells Fargo could have deposed Mr. Piotrowski had it wanted to travel to Texas to take his deposition. Wells Fargo has no basis for error on this issue.

While Mr. Piotrowski properly gave very limited opinion testimony, much of his testimony was purely factual – such as explaining the PSA, describing the pre-transaction due diligence relating to both Yale and Wells Fargo, and describing the 2008 mortgage crisis. All of this testimony was presented without objection. Further, Piotrowski testified as to common understanding of the "costs of transfer of servicing" language, which "is standard in all securitization transactions." DE 78-1 at page 143. Piotrowski also testified to a conversation with Yale, pre-contract, in which he explained what the costs of transfer of servicing might be, and told Yale that their range would be between $50,000 and $100,000. DE 78-1 at Page 146-49. This testimony as to the pre-contract understanding of Yale was clearly relevant to the disputed contract interpretation issue under the Court's jury instructions (DE 69 at page 8; issue is "what the parties intended the contract to mean at the time the contract was entered into"). The Court gave a cautionary instruction that the evidence was to be considered only as to Yale's state of mind and not for "the truth of the matter." DE 78-1 at pages 147-48. The Court

COFFEY BURLINGTON
OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

properly addressed the issues arising under Mr. Piotrowski's testimony.

While Mr. Piotrowski was paid for his time in travel from Texas for trial (properly) Wells Fargo had every opportunity to bring this out and try to use it as a basis for impeachment. The harm to Wells Fargo from Mr. Piotrowski's testimony was that he had personal knowledge which tended to show that Wells Fargo's manufactured and self-serving overcharging was improper. If Piotrowski was not correct as to the common meaning of "costs of transfer of servicing," Wells Fargo, which was involved in hundreds of similar deals, had every opportunity to offer competent evidence to contradict him. They did not, which is itself as persuasive as Mr. Piotrowski's testimony.

Wells Fargo erroneously challenges Mr. Kahn's testimony, testimony which was given without objection at trial. DE 78-1 at 201-202; *id*. at 203; id. at 217-18. The fourth time the subject was addressed, Wells Fargo did make (after the question was answered) an objection that the testimony was contrary to the court's summary judgment ruling, id. at 223-24, which the Court overruled, finding that no such ruling had been made. DE 78-1 at page 224-25. The Court was correct: while the Court ruled that the costs of a servicing transfer could be recovered by Wells Fargo **in addition** to the compensation for servicing (which is true), Mr. Kahn's testimony (as ultimately borne out by the jury's verdict) was that Wells Fargo was not trying to recover its actual **costs,** but only to increase its **compensation** to a

11

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

higher level beyond that allowed by the PSA. The Court's ruling was perfectly correct, and certainly not an abuse of discretion. Wells Fargo does not dispute that Mr. Piotrowski's and Mr. Kahn's evidence of Yale's understanding of the contract at its inception was relevant. Wells Fargo simply did not either contradict their testimony, nor impeach it, nor offer testimony of a differing understanding from any of the corresponding Wells Fargo employees as of the relevant time, the inception of the contract. This is not a basis for granting relief to Wells Fargo post-trial.

There is no basis for a new trial (Wells Fargo's alternative relief). A trial court cannot substitute its judgment for the jury's (even if it disagreed with the jury), may not reweigh the evidence and a motion for new trial cannot be granted unless the evidence so heavily preponderates against the verdict so that it is a miscarriage of justice. *Insurance Co. of North America v. Valente,* 933 F.2d 921, 922-23 (11 th Cir. 1991); *United States v. Cox,* 995 F. 2d 1041, 1043 (11th Cir. 1993)(same strict standard in civil and criminal cases). This stringent standard cannot be met here.

12

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

WHEREFORE, Plaintiff Yale Mortgage Corporation requests that the Court deny Wells Fargo's post-trial motions.

Respectfully submitted,

/s/Fernando L. Tamayo
Jeffrey B. Crockett, Florida Bar No. 347401
jcrockett@coffeyburlington.com
Fernando L. Tamayo, Florida Bar No. 28530
ftamayo@coffeyburlington.com
COFFEY BURLINGTON, P.L.
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261
*Counsel for Plaintiff Yale Mortgage Corporation*

Case No. 11-22605-Civ-Martinez-McAliley

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF, on May 24, 2012, on all counsel or parties of record on the Service List below.

                                       s/Fernando L. Tamayo
                                       Fernando L. Tamayo

| | |
|---|---|
| George E. Nadar, Esq.<br>gnader@trenam.com<br>TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.<br>101 East Kennedy Boulevard, Suite 2700<br>Tampa, Florida  33602<br>Tel: 813-223-7474<br>Fax:  813-223-6553 | Michael E. Johnson, Esq.<br>michael.johnson@alston.com<br>ALSTON & BIRD LLP<br>90 Park Avenue<br>New York, New York  10016<br>Tel:  212-210-9400<br>Fax:  212-210-9444 |

*Counsel for Defendant Wells Fargo Bank*