THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 11-22605-CIV-MARTINEZ-MCALILEY

YALE MORTGAGE CORPORATION,

    Plaintiff,

vs.

WELLS FARGO BANK, N.A.

    Defendant.

_____/

**DEFENDANT WELLS FARGO'S REPLY BRIEF IN RESPONSE TO YALE'S ANSWER MEMORANDUM OF LAW AND IN FURTHER SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL**

Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its undersigned counsel, hereby submits this Reply Brief in response to Yale's Answer Memorandum of Law and in further support of its Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial (the "Motion").

**ARGUMENT**

**I.    THE EVIDENCE ADDUCED AT TRIAL DID NOT SUPPORT THE JURY'S FINDING THAT WELLS FARGO BREACHED THE PSA**

In its Opposition, dated May 24, 2012, Yale presents a one-sided perspective of the trial evidence, but essentially ignores the actual terms of the PSA. It is not surprising that Yale does not want to address the terms of the contract, since the PSA contains clear language that does not, in any way, limit Wells Fargo's right to recover *all* costs of transferring servicing, including the full amount of the Servicing Delta and default and restructuring manager fees (the "D&R Expenses"), as the Court already recognized in its Summary Judgment Order. (*See* DE 44 at 8 ("If the agreement itself states that it is

not limited to specific costs, it is not limited to specific costs.").)  Wells Fargo was therefore entitled to deduct the Servicing Delta and D&R Expenses from Yale's reimbursements.

Contrary to Yale's suggestion, the fact that Wells Fargo and Yale construed the terms of the PSA differently at trial and on Yale's Summary Judgment Motion does not somehow render the contract ambiguous.  (*See* Opposition at 3.)  By stating in its Opposition to Yale's Summary Judgment Motion that "the record contains disputed issues of material fact" (DE 27 at 1), Wells Fargo was simply alerting the Court that the parties disagreed over the meaning of certain provisions in the PSA and that evidence could be required to resolve the dispute.  Disagreement between parties over the interpretation of contract terms does not give rise to a finding of contractual ambiguity. *See*, *e.g.*, *Woods v. Boston Scientific Corp.*, Case No. 06-5380, 2006 WL 4495530, at *9 (S.D.N.Y. Nov. 1, 2006) ("Contract ambiguity is not established simply because the parties disagree as to the meaning of a particular provision."); *see also Borkan v. Quest Medical, Inc.*, Case No. 95-10381, 1996 WL 445361, at *3 (S.D.N.Y. Aug. 7, 1996) (same).  More importantly, disagreement as to the meaning of the terms of contract does not sanction a party's effort to mislead the jury through self-serving testimony that flies in the face of the actual contract language, which is precisely what Yale attempted at trial.

Instead of treating the PSA, in its Opposition Yale argues that the jury's verdict finds support in the testimony of Yale's three witnesses.  (*See* Opposition at 3-4.)  But Yale cannot use the self-serving testimony of its employees and a paid consultant to rewrite the terms of the agreement, and a jury verdict founded on "evidence" that flies in

the face of the PSA's unambiguous text cannot stand.  The Court thus properly sustained an objection to Yale's attempt to introduce testimony from Yale's CFO, Steven Chaby, as to his own, personal views of the PSA's meaning.  (*See* DE 78-2 at 76:12-19 ("I don't know that he's in a position to interpret a contract.").)  Other Yale witnesses, however, were allowed to testify as to their opinions as to the meaning of the PSA, and their testimony makes clear that those opinions are at odds with the plain meaning of the contract.  Over Wells Fargo's objection, Yale's CEO, Gilbert "Woody" Kahn, testified that Wells Fargo could not recover the Servicing Delta because the PSA limited Wells Fargo's compensation to the 50 basis point Servicing Fee (*see* DE 78-1 at 223:11-225:22), even though the Court had previously rejected this position in denying Yale's Motion for Summary Judgment.  (*See* DE 44 at 5.)  Yale's third witness, David Piotrowski also testified to an interpretation of the PSA that finds no support in the document's terms.  In particular, Piotrowski testified that he believed the PSA permitted Wells Fargo to recover only $50,000-$100,000 in servicing transfer expenses, a "limit" that exists nowhere in the PSA.  (*See* DE 78-1 at 149:8-9.)[1]  The jury should never have heard such testimony, and Yale's reliance on it to justify the breach of contract verdict makes clear that the verdict cannot be upheld.

Yale also contends that the jury was entitled to ignore the PSA because Wells Fargo supposedly presented insufficient evidence to support the Servicing Delta expense. (*See* Opposition at 4-5.)  Yale's assertion is belied by the actual trial record.  Wells Fargo's evidence showed that Yale's default left the CTS division with no choice but to

---

[1] In its Opposition, Yale claims that there was evidence (without identifying a witness or document) "that the contract contemplated only one invoice, to be sent shortly after transfer of servicing was completed." (Opposition at 3-4.)  No such provision exists in the PSA.  Yale's statement only confirms that it abused the trial process by introducing testimony that mischaracterized the actual terms of the PSA.

hire a successor servicer. (*See* DE 78-2 at 175:20-177:4.) The jury heard evidence from James Thomes, an employee who had primary responsibility for retaining a successor servicer, as to the difficulty in finding an alternative successor servicer and the decision to retain Wells Fargo's Home Mortgage division. (*See id*. at 181:1-15; DE 72, Ex. 7.) Thomes testified as to the necessity of agreeing to pay Home Mortgage a 50 basis point Servicing Delta in addition to the 50 basis point Servicing Fee, and the contract embodying the obligation to pay the Servicing Delta was introduced into evidence. (*See id*. at 179:2-181:12; DE 72, Ex. 7.) The jury also had evidence that, since Yale's default, CTS has actually paid Home Mortgage Servicing Delta amounts totaling $934,812.37 pursuant to their agreement. (*See* DE 72, Ex. 1 at 2.) Notably, Yale chose not to rebut *any* of this evidence at trial.

Unable to cite any evidence contradicting Wells Fargo's evidence, Yale argues that the jury was entitled simply to ignore it, because Wells Fargo did not present information as to the "personnel, labor, or equipment spent [*sic*] on the servicing transfer." (Opposition at 5.) There is, of course, no authority to suggest that expense evidence at this level of detail is required. If accepted, Yale's argument would establish a new evidentiary standard that would lead to absurd results. For example, the plaintiff in an auto accident case could be required to subpoena the owner of the body shop to testify as to employee salaries, material costs and overhead expenses that support the amount charged to fix the damaged vehicle. There was ample and unrefuted evidence of the Servicing Delta expense, and the jury could not have justifiably disregarded that evidence in coming to its verdict. Accordingly, Wells Fargo should be awarded judgment as a matter of law on Yale's breach of contract claim.

II. **YALE'S BREACH OF CONTRACT IS A COMPLETE DEFENSE, AND YALE'S DAMAGES AWARD SHOULD BE OFFSET BY THE DAMAGES FLOWING FROM ITS OWN BREACH**

In its Opposition, Yale attempts to confuse and cloud Wells Fargo's breach of contract affirmative defense, as it apparently succeeded in doing at trial. As an initial matter, Yale blatantly mischaracterizes the Court's jury instruction on Wells Fargo's breach of contract affirmative defense as stating that "Wells Fargo was only entitled to recover its 'costs' of servicing transfer in the event of Yale's default." (Opposition at 6.) The Court's actual instruction provided that "when seeking to recover damages for breach of contract, the non-breaching party may recover general, consequential contract damages which are the natural and probable consequence of the breach." (DE 78-4 at 59:23-60:1.) The Court's instruction is entirely consistent with well-settled law holding that a party that breaches a contract is liable to the non-breaching party for damages, and the amount of damages must put the non-breaching party in as good a position as if the breach had not occurred. *See, e.g., Boyce v. Soundview Tech Group, Inc.*, 464 F.3d 376, 391 (2d Cir. 2007); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003) ("[D]amages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract."). There is *nothing* in the PSA to suggest that the rights Wells Fargo had under section 6.14 somehow foreclosed it from pursuing other breach of contract remedies. *See, e.g., Winkleman v. Winkleman*, 203 N.Y.S. 63, 64 (App. Div. 1924). To the contrary, section 6.15 of the PSA confirms that, notwithstanding any specific remedy appearing in the PSA (such as that contained in section 6.14 for servicing transfer expenses), Wells Fargo retained its common law damages rights. (*See* DE 72, Ex. 4 at 91 ("Except as

- 5 -

otherwise expressly provided in this Agreement, no remedy provided for by this Agreement shall be exclusive of any other remedy, and each and every remedy shall be cumulative and in addition to any other remedy . . . .").)  Yale's attempt to justify the jury's verdict by claiming that section 6.14 provided Wells Fargo's "sole remedy" is thus entirely specious.  (*See* Opposition at 6.)

Yale also tries to confuse the Court, as it apparently succeeded in doing with the jury, by disclaiming any relationship between the damages awarded by the jury on Yale's breach of contract claim and the damages suffered by Wells Fargo as a result of Yale's intentional breach.  On Yale's claim, the jury awarded it damages on the basis of an (erroneous) conclusion that Wells Fargo was not entitled to recoup Servicing Delta (and possibly other) expenses as servicing transfer expenses under section 6.14.  (*See* DE 71 at 1.)  The jury set damages in an amount that slightly exceeded the sum of Wells Fargo's Servicing Delta reimbursements.  As noted in the preceding point, Wells Fargo introduced unrebutted evidence as to the reason for and amount of the Servicing Delta expense, and nothing in the record permits a conclusion other than that the Servicing Delta expense was incurred solely because of Yale's breach.  Thus, if Yale is entitled to recover damages equal to the Servicing Delta expense because it was not properly set off by Wells Fargo under section 6.14, Yale's own breach is a complete defense because that breach resulted in Wells Fargo incurring Servicing Delta expense.

In counsel's closing argument at trial, Yale confused the jury by suggesting that any harm to Wells Fargo from Yale's acknowledged breach of contract had already been cured because Wells Fargo had already recouped the Servicing Delta from Yale's reimbursements.  (*See* DE 78-4 at 20:21-21:8.)  This statement was misleading and

- 7 -

prejudicial because it was predicated on the assumption that Wells Fargo would keep the Servicing Delta amounts it had recouped. That assumption was unfounded, because the jury considered Wells Fargo's affirmative defense only after making an award of Servicing Delta damages to Yale. In other words, the jury should have considered the affirmative defense from the perspective of Wells Fargo having paid the Servicing Delta amount without recoupment from Yale. Had the jury done so, it would have awarded Wells Fargo damages in an amount equal to the Servicing Delta amount. That the jury set Wells Fargo's breach of contract damages at "0" after having properly found that Yale caused Wells Fargo to incur damages by breaching the PSA makes clear that Yale succeeded in leading the jury astray.

In support of its assertion that the jury was within its right to find that Wells Fargo suffered no compensable damages, Yale presents three flawed and speculative theories. First, Yale contends that the jury's response to verdict question 3 could mean that it concluded that Wells Fargo was damaged by Yale's breach in the amount of $100,000 but set the damages at "0" in response to verdict question 4 because Wells Fargo "had already paid itself." (Opposition at 7.) Yale's explanation improperly assumes that the jury did not carefully read question 3, which required the jury to determine whether Wells Fargo *incurred* damages from Yale's breach. (*See* DE 71 at 2.) Servicing transfer expenses that Wells Fargo recovered from Yale prior to trial (making Wells Fargo whole) were obviously not damages Wells Fargo has incurred.

Yale next tries to reconcile the inconsistent responses to verdict questions 3 and 4 by again claiming that Wells Fargo did not quantify its damages. (Opposition at 7.) As shown above, the evidence pertaining to the Servicing Delta was substantial and

unrefuted. The jury's finding in response to verdict question 3 that Wells Fargo incurred damages as a result of Yale's breach confirms that the jury was satisfied that Wells Fargo met its burden of proof.

In its final attempt to reconcile the responses to questions 3 and 4, Yale attempts to defend the result by speculating that the jury was simply confused and misunderstood questions 3 and 4 to be "duplicates" of earlier verdict questions. (Opposition at 7.) There is no basis for this remarkable suggestion, but were it the case that the jury misunderstood the verdict form, that alone would require that Wells Fargo be awarded a new trial. *See*, *e.g.*, *Overseas Private Inv. Corp. v. Metro. Dade Cnty*, 47 F.3d 1111, 1115 (11th Cir. 1995) (remanding to the district court for a new trial when the verdict forms were confusing and unclear); *see also Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 175 (11th Cir. 1975) (affirming the grant of a new trial where the verdict form "indicated that the jury was obviously confused"). The jury's award of "0" damages in respect of Yale's breach of the PSA is thus inconsistent with its finding in respect of verdict question 3 and the evidence admitted at trial, and Wells Fargo should be awarded judgment as a matter of law or a new trial.

### III. THE ADMISSION OF PIOTROWSKI AND KAHN'S TESTIMONY WAS IMPERMISSIBLE AND WARRANTS A NEW TRIAL

Yale has failed to rebut Wells Fargo's showing that Piotrowski should not have been permitted to testify at trial. Yale has cited no authority to support its contrary position, other than the two cases it previously cited and that Wells Fargo distinguished in its opening Motion. *See Dakota Minn. & E.R. Corp. v. Wisconsin & S.R. Corp.*, 657 F.3d 615, 619 (7th Cir. 2011) and *Tampa Bay Shipbuilding Co. v. Cedar Bay Shipping Co.*, 320 F.3d 1213, 1216-23 (11th Cir. 2003), cited at Opposition at 9. It is telling that

Yale continues to rely exclusively on these two cases, since (as shown in Wells Fargo's Motion) they do not support the proposition that a non-party lay witness can testify as to usage of trade and industry understanding. (*See* Mot. at 19-20.) Yale has not addressed Wells Fargo's position at all, a tacit admission that the cases simply do not support Yale's argument that Piotrowski was properly allowed to testify.[2]

Rather than cite authority supporting the admission of Piotrowski's paid lay testimony, Yale spills considerable ink in an effort to suggest that Wells Fargo should have taken steps to mitigate the harm it suffered. The issue, however, is not whether Wells Fargo could have done something to deal with Piotrowski's testimony, but rather whether the testimony should have been admitted in the first place. It is thus irrelevant whether Wells Fargo could have deposed Piotrowski, impeached him at trial or offered contradictory evidence (*see* Opposition at 10-11), because it was error for him to have taken the stand at all. *See, e.g.*, *U.S. v. Brown*, 546 F.2d 1194, 1211 (5th Cir. 1977) (noting that testimony concerning unindicted tax returns was inadmissible and was plain error for the judge to present to the jury despite the judge's limiting instruction); *see also Aetna Cas. & Sur. Co. v. Cooper*, 485 So. 2d 1364, 1366 (Fla. Dist. Ct. App. 1986) (granting a new trial when inadmissible evidence was admitted via tape and the limiting instruction failed to cure the tape's prejudicial effect).[3] Wells Fargo suffered harm from the admission of Piotrowski's testimony, and a new trial is warranted.

---

[2] Yale's suggestion that Piotrowski's testimony is analogous to that of a doctor or lawyer who was involved in providing the services at issue in a medical malpractice or legal malpractice case misses the mark completely. As fully discussed in the Motion, Piotrowski was neither a party to the PSA nor an employee employed by either party, so he had no relevant evidence to give as to the parties' interpretations of the PSA. (*See* Mot. at 17-20.)

[3] Yale's suggestion (*see* Opposition at 9) that Piotrowki should be considered an expert is simply frivolous. Not only did Yale fail to comply with *any* of the local or Federal Rule of Civil Procedure requirements for expert disclosure, but it never proffered him as an expert at trial nor was he was qualified by the Court. In

Yale's effort to defend the testimony of its CEO, Gilbert "Woody" Kahn, carefully ignores the substance of his testimony and the prejudicial effect it had on Wells Fargo. (*See* Opposition at 11.) Unlike the other testimony to which Yale alludes (and to which Wells Fargo did not object), in the testimony that is the subject of Wells Fargo's Motion, Kahn opined that Wells Fargo breached the PSA by recouping compensation in excess of the 50 basis point Servicing Fee. (*See* DE 78-1 at 225:15-25.) Wells Fargo properly objected to this testimony because it was entirely inconsistent with the Court's summary judgment ruling that the 50 basis point Servicing Fee was *not* a limit on the compensation that Wells Fargo could recover from Yale. (*See* DE 44 at 5.) If the jury credited Kahn's testimony, it could have resulted in it erroneously concluding that Wells Fargo breached the PSA in response to verdict form question 1. Kahn's testimony should not have been admitted, and Wells Fargo should be awarded a new trial.

## **CONCLUSION**

For all the reasons set forth above and in its Motion, Wells Fargo respectfully requests that the Court enter judgment as a matter of law in its favor or, in the alternative, grant a new trial.

Dated: June 4, 2012

---

fact, Yale acknowledged prior to the start of trial that Piotrowski was not being offered as an expert. (*See* DE 78-1 at 75:7-13; 79:12-22.)

- 11 -

/s/George E. Nader
George E. Nader, Esquire
Florida Bar No. 348600
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Blvd., Suite 2700
Tampa, Florida 33602
Telephone: 813.223.7474
Telefax: 813.223.6553

/s/ Michael E. Johnson
Michael E. Johnson (*pro hac vice*)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016-1387
Telephone**:** (212) 210-9400
Facsimile: (212) 210-9444
Email: michael.johnson@alston.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed with the Clerk of the Court using CM/ECF and served via electronic mail and U.S. Mail to Jeffrey B. Crockett, Esq., Coffey Burlington, Esq. Office in the Grove, Penthouse, 2699 South Bayshore Drive, Miami, FL 33133, on this 4th day of June, 2012.

*/s/George Nader*
George E. Nader, Esquire