UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  11-22605-CIV-MARTINEZ-MCALILEY**

YALE MORTGAGE CORPORATION,

      Plaintiff,

vs.

WELLS FARGO BANK, N.A.,

      Defendant.

_____/

## ORDER ON POST-TRIAL MOTIONS

THIS CAUSE came before the Court upon Plaintiff's Consolidated Post-Trial Motion

(D.E. No. 79) and Defendant Wells Fargo's Renewed Motion for Judgment as a Matter of Law

or, in the Alternative, Motion for New Trial (D.E. No. 77).  After careful consideration and for

the reasons set forth below, Plaintiff's motion is granted in part and denied in part and

Defendant's motion is denied.

### I.  Relevant Factual and Procedural Background[1]

Plaintiff Yale Mortgage Corporation ("Plaintiff") filed suit against Defendant Wells Fargo

Bank, N.A. ("Defendant") for breach of contract relating to a Pooling and Servicing Agreement

("PSA") between the two parties.  This agreement "pertained to the pooling and securitization of

approximately $100 million of individual home mortgages and certificates entitling investors to

receive principal and interest payments made by mortgage loan borrowers."  (D.E. No. 43, Joint

Pretrial Stipulation at 3).  The parties agreed with regard to the basic facts of this case before

_____

[1]The facts are discussed in more detail in the Analysis section of this order.

trial.  Specifically, the parties stipulated as follows:

Plaintiff was the original Servicer for the transaction, tasked with collecting payments from borrowers in the loan pool, forwarding funds received to appropriate trust accounts, and making scheduled advances on behalf of defaulting borrowers, if necessary.  Plaintiff was required to make "servicing advances" on behalf of borrowers who failed to make payments and to pay for certain maintenance of mortgaged properties which were foreclosed.  Under the terms of the PSA, Plaintiff was entitled to be reimbursed for these "servicing advances" when they were recovered by payment or foreclosure.  The PSA set the Servicer's compensation at one-half of one percent of the total outstanding principal balance of the loans, which was paid to Plaintiff on a monthly basis as its fees.  Defendant was the Master Servicer under the PSA.

In August and September 2008, Plaintiff notified Defendant that it could not make further Servicing Advances.  Defendant sent Plaintiff formal notice of default and then termination, dated September 15, 2009 and October 8, 2011 . . . the result of which was that Plaintiff was terminated as Servicer due to its breach of the PSA.  There is no dispute as to . . . [Plaintiff's] default or the propriety of its termination for default.

Following Plaintiff's termination, Defendant assumed the duties of replacement Servicer under the PSA.  Defendant had taken over these duties by December 1, 2008.

The PSA required that Plaintiff cooperate in the transition process, and Plaintiff did so; there is no issue of breach of Plaintiff's duties in that regard.

As of Plaintiff's termination, Plaintiff had made $4,208,434 in prior "servicing advances" for which it was entitled to reimbursement upon recovery as stated above (subject to any valid defenses raised by Wells Fargo).  As of January 31, 2012, $3,435,515 of these advances have been repaid to Plaintiff.

Defendant has invoiced Plaintiff, and set off against reimbursement of advances due to Plaintiff, an "additional servicing fee" or "servicing delta" of $20,000 to $30,000 per month (one-half percent of the total outstanding loan balances), in addition to receiving as an administrative fee of the same one-half percent servicing fee previously received by Plaintiff.  The total amount of "additional servicing fee" or "servicing delta" set off against reimbursement of advances due to Plaintiff as of January 31, 2012 is $935,812.37.

In addition, Defendant has set off against Plaintiff's reimbursements of advances an additional amount of $140,000 . . . as reimbursement for legal fees

and other costs of transfer.

*Id*. at 4-5.

Plaintiff filed a motion for summary judgment relying on three specific provisions of the PSA asking the Court to find as a matter of law that Defendant is not entitled to the additional servicing fee and that Defendant is not entitled to costs for transfer of servicing for any period of time exceeding the maximum ninety-day transition period.  (D.E. No. 20).  The Court denied this motion.  (D.E. No. 44).

A jury trial was held in this case and the jury entered a verdict in Plaintiff's favor, awarding it $954,812.37 in damages for breach of contract.  (D.E. No. 71).  The jury, however, also found that Plaintiff waived its right to be reimbursed for a portion of the servicing advances by accepting payments from Defendant from which the additional fee had been deducted, reducing Plaintiff's award by $526,777.06 for a sum total recovery in Plaintiff's favor of $428,035.31.  *Id*.  Both parties have now filed post-trial motions.

## II.  Legal Standard[2]

Plaintiff has filed its motion pursuant to Rules 50(b), 54(c), 54(d) and 59(e) of the Federal Rules of Civil Procedure and Defendant has filed its motion pursuant to Rule 50(b) or in the alternative Rule 59 of the Federal Rules of Civil Procedure.  Rule 50 provides that

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against  the party on a claim or defense that under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1)(B).  Rule 50(b) provides that after the entry of a judgment a movant

---

[2]These standards are discussed in more detail in the Analysis section of this order.

"may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."

"While Rule 59(e) does not set forth any specific criteria, the courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Williams v. Cruise Ships Catering & Serv. Int'l*, 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004).

Rule 54(c) provides in relevant part that every final judgment other than a default judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Rule 54(d) provides that unless otherwise prohibited by federal statute or these rules costs other than an attorney's fee should be awarded to a prevailing party.

### III.  Analysis

As stated above, both parties in this action have filed post-trial motions.  The Court addresses each party's motion in turn.

### A.    Plaintiff's Consolidated Post-Trial Motion

Plaintiff "(1) renews its motion for directed verdict on the defense of "waiver" and asks the Court to alter and amend its judgment . . . accordingly; (2) asks the Court to grant Yale declaratory relief as necessary to fully resolve the dispute as pled; . . . (3) moves the Court to alter or amend the judgment to add prejudgment interest;" and (4) moves the Court to alter or amend its judgment and award costs to Yale.  After careful consideration and for the reasons set forth below, the Court grants Plaintiff's motion in that it awards Plaintiff certain costs it requests but denies Plaintiff's motion in all other respects.

-4-

1.      **Renewed Motion for Judgment as a Matter of Law on Affirmative Defense of Waiver**

First, Plaintiff argues that the Court should have granted judgment as a matter of law on Defendant's affirmative defense of waiver because "there was no evidence supporting a finding of waiver." (D.E. No. 79). In ruling on Plaintiff's Rule 50 renewed motion for judgment as a matter of law, this Court draws "all inferences in favor of the non-moving party" and "affirms the jury verdict unless there is no legal basis upon which the jury could have found" waiver. *Telecom Technical Servs., Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir. 2004). In order to survive the motion for judgment as a matter of law with regard to its affirmative defense, Defendant must have presented enough evidence to permit a jury to find in Defendant's favor on each and every element of the defense. *Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 659 (11th Cir. 1998). Here, the Court finds that Defendant presented sufficient evidence to sustain the jury's finding.

"Waiver is the voluntary and intentional relinquishment of a known right." *Chicago Ins. Co. v. Kreitzer & Vogelman*, 265 F. Supp. 2d 335, 343 (S.D.N.Y. 2003).[3] It "requires evidence of a clear manifestation of intent . . . and cannot be lightly inferred." *Id.* (internal quotations omitted). At issue in this case was whether Plaintiff "waived its right to be reimbursed for a portion of the servicing advances by accepting payments from Defendant from which the additional servicing fee had been deducted." (D.E. No. 71 at 2). The Court finds that there was sufficient evidence for a reasonable jury to find waiver.

Specifically, evidence was presented that Plaintiff originally disputed the deduction of the

---

[3]The parties agreed that substantive New York law applies to this case.

servicing fee amounts from the amounts owed to Plaintiff, having counsel send a letter to

Defendant on their behalf threatening litigation if the deductions did not cease.  (D.E. No. 72-19,

Pl.' s Exh. 25).  Defense counsel responded to this letter explaining Defendant's basis for

deducting the additional servicing fee and rejecting Plaintiff's demand that they cease deducting

the additional servicing fee.  (D.E. No. 72-20, Pl.'s Exh. 26).  Plaintiff's Chief Financial Officer,

Steven Chaby, testified at trial that he is unaware of any response to this letter or any further

communication from Plaintiff objecting to the additional servicing fee.  (D.E. No. 78-2, Trial

Trans. at 88-90).

       In fact, after this letter from Defense counsel was sent, Defendant continued to send

reimbursements less this additional servicing fee on a monthly basis for almost two years to

Plaintiff.  *Id*. at 88-91.  Plaintiff accepted these servicing fees and the deduction of the additional

servicing fee without comment.  *Id*.  Most importantly, Defendant introduced emails that the jury

could interpret as Plaintiff's explicit acceptance of these fees.  Specifically, in emails with regard

to specific reimbursements minus the servicing fees Chaby states "I agree with your total

recoupment figure" and "[w]e agree with your figures."  (D.E. No. 72-26, Def. Exh. Q); (D.E.

No. 72-27, Def. Exh. R); *see also* (D.E. No. 78-2, Trial Trans. at 93, 96-97).  Furthermore,

Chaby testified that he sent a confirming email such as the ones introduced into evidence every

month.  (D.E. No. 78-2, Trial Trans. at 93).  The Court acknowledges that Chaby testified that his

statements in these emails meant only that he agreed with the calculation (D.E. No. 78-2, Trial

Trans. at 91); however, the jury was free to interpret the emails otherwise.  The emails

themselves do not contain any qualifying language.  *See* (D.E. No. 72-26, Def. Exh. Q); (D.E.

No. 72-27, Def. Exh. R).  Accordingly, the Court finds that there was sufficient evidence in the

record for the jury to find a voluntary and intentional relinquishment of a known right.

### 2.     Request that Judgment be Amended to Award Declaratory Relief

Next, Plaintiff argues that pursuant to Federal Rule of Civil Procedure 54(c), which

provides that a "final judgment should grant the relief to which each party is entitled," the Court

should amend the judgment and award Plaintiff declaratory relief.  Specifically, Plaintiff argues

that the Court should enter declaratory relief stating that the additional servicing fee charged by

Defendant is not allowed by the PSA and further setoffs for this fee are not permitted.  For the

reasons set forth below, the Court declines at this time to enter the requested declaratory relief.

> The parties stipulated as follows in their Joint Pretrial Stipulation:
>
> The parties have agreed to stop the computation of damages for purposes of trial
> as of January 31, 2012.  Depending on the Court's ruling on the propriety of the
> 'additional servicing fee' or 'servicing delta' under the parties' contract,
> Defendant will (if the ruling is in its favor) or will not (if the ruling is in Plaintiff's
> favor) continue to set off in the future such fees against future reimbursements due
> to Plaintiff, and will not or will repay Plaintiff any additional servicing fees or
> servicing delta it has set off against advances in the interim.

(D.E. No. 43 at 6-7).  The parties, however, have never asked the Court to rule on this issue

despite their stipulation.  Plaintiff asked to add a question to the verdict form asking *the jury* to

decide this issue pursuant to the parties' stipulation, and Defendant responded, stating that it was

unnecessary.  Specifically, the following exchange took place.

> MR. JOHNSON:  Yeah, your Honor, there is no different [sic] from any other
> case where parties find liable for a breach of contract or tort.  The understanding
> is always, it's learned its lesson and it's not going to repeat.  But courts aren't in
> my experience in the business of then in the future saying, okay, and don't do it
> again.  I did mean that's essentially what Yale's asking for here.  I don't think
> that's, your Honor,'s [sic] --
>
> THE COURT:  No that's not my inclination.

-7-

MR. CROCKETT: Okay, but then, so, if I understand the Court's ruling there will not be a forward looking finding.

THE COURT: Right.

(D.E. No. 78-3, Trial Trans. 102-103).  However, as stated above, neither party has ever asked the Court to decide this issue.  The parties specifically agreed, however, that they would be bound by the Court's decision on this issue, and moreover, Defendant appears to have indicated at trial that it would be bound by whatever the jury decided on the breach of contract issue. Accordingly, as the jury found for the Plaintiff on the breach of contract issue, Defendant appears to have indicated at trial on the record that it would not continue to set off the additional servicing fee.  The Court orders the parties to confer as professionals regarding this matter. Plaintiff may file a motion for contempt, which this Court shall give due consideration if Plaintiff believes Defendant's statements at trial and its actions since trial warrant such a motion.[4]  The parties may also choose to each file a joint motion to have this Court adjudicate this issue pursuant to the parties' stipulation.  If such a joint motion is filed, within five days of filing such a motion, each party shall also submit proposed findings of fact and conclusions of law citing to the trial transcript and the trial exhibits.

### 3.      Prejudgment Interest

Plaintiff also moves to amend the judgment and have the Court award it prejudgment interest.  Under Florida law,[5] "[w]hen a verdict liquidates damages on a plaintiff's out-of-pocket,

---

[4]The Court acknowledges that Defendant has argued that it has not tried to collect any future setoff amounts.

[5]The parties agree that this is a procedural issue to which Florida law applies as both parties rely on Florida law in making their arguments relating to prejudgment interest.  *See* (D.E. Nos. 79, 81, & 82).

pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory

rate from the date of that loss." *Argonaut Ins. Co. v. May Plumbing, Co.*, 474 So. 2d 212, 215

(Fla. 1985).  Here, however, the verdict did not liquidate damages as of a date certain.[6]  *See* (D.E.

No. 71).  It is not purely a ministerial act for the Court to calculate prejudgment interest and

would require this Court to make certain findings.  Even Plaintiff appears to acknowledge this,

stating in that it has provided a spreadsheet to show how it calculated the prejudgment interest

due and that its "calculation is based on conservative assumptions as to the basis for the jury's

verdict under the record."  (D.E. No. 79 at 11); *see also* (D.E. No. 82 at 9).  Accordingly,

Plaintiff's request for prejudgment interest is denied.

### 4.      Costs

Finally, Plaintiff seeks $7,136.60 in costs as the prevailing party pursuant to Federal Rule

of Civil Procedure 54(d) and 28 U.S.C. § 1920.  Defendant disputes only the costs Plaintiff

requests for its expenses incurred in hiring Champion Legal Graphics and Video ("Champion").

Plaintiff states that Champion provided "technology services in running the exhibit and transcript

presentation equipment used by both parties during trial."  (D.E. No. 79 at 12).  Defendant argues

that technological trial support such as this is not a recoverable cost under 28 U.S.C. § 1920.

This Court agrees.

Section 1920 allows for the recovery of certain specific costs.  "[A]bsent explicit

statutory authorization federal courts are limited to those costs specifically enumerated in 28

U.S.C. § 1920." *State Contracting & Eng'g Corp. v. Condotte Am., Inc*., No. 97-7014-CIV,

2002 WL 34365828, at *1 (S.D. Fla. Aug. 28, 2002); *see also Crawford Fitting Co. v. J.T.*

---

[6]The Court also notes that neither party asked that the jury to determine this issue.

*Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987) (finding that while Federal Rule of Civil Procedure 54(d) "grants courts discretion to tax whatever costs may seem appropriate" it does not give a court the discretion to tax costs that are not specified in section 1920). Technological support expenses are not included within these listed costs. Accordingly, while the Court will allow Plaintiff to recover the other costs it seeks, it will not allow Plaintiff to recover its expenses relating to Champion. A final judgment as to costs will be entered separately in Plaintiff's favor in the amount of $2,587.10.

### B. Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial

Defendant has also filed a post-trial motion. Defendant argues that judgment as a matter of law should be entered in its favor or in the alternative this Court should grant a new trial because there was no basis for the jury to find that Defendant breached the PSA, because Plaintiff's breach of the PSA is a complete defense, because the Court erred in permitting Plaintiff's Chief Executive Officer, Gilbert Kahn, to testify as to his interpretation of section 6.14 of the PSA and because the Court erred in permitting David Piotrowski to testify. After careful consideration and for the reasons set forth below, the Court denies Defendant's motion.

### 1. Defendant's breach of the PSA

Defendant argues that it should be granted judgment as a matter of law or in the alternative a new trial because the "terms of the PSA unambiguously permitted" Defendant to recover the additional servicing fee and thus Defendant argues "there was no basis upon which the jury could have concluded that . . . [Defendant] breached the contract." (D.E. No. 77 at 12). In ruling on Defendant's Rule 50 renewed motion for judgment as a matter of law, this Court

draws "all inferences in favor of the non-moving party" and "affirms the jury verdict unless there is no legal basis upon which the jury could have found" breach of contract. *Telecom Technical Servs., Inc.*, 388 F. 3d at 830. In order to survive the motion for judgment as a matter of law with regard to its breach of contract claim, there must have been sufficient evidence to permit a jury to find in Plaintiff's favor on each and every element of this claim. *Bogle*, 162 F.3d at 659. Here, the Court finds there was sufficient evidence to support the jury's verdict.

First, to the extent that Defendant is arguing that the jury's verdict, finding that Defendant breached the PSA, is inappropriate as a matter of law based on this Court's ruling in the Order Denying Plaintiff's Motion for Partial Summary Judgment, the Court finds this argument is without merit. In the order on the motion for partial summary judgment, the Court issued the following specific rulings based on specific arguments made by Plaintiff.

First, the Court found that the plain language of section 6.14(b) of the PSA[7] did not prohibit Defendant from seeking the additional servicing fee from Plaintiff. (D.E. No. 44 at 5). The Court found this provision simply did not address the issue, providing simply that Defendant could receive the same compensation that Plaintiff could receive but not prohibiting or allowing additional compensation. *Id*. Second, the Court found that the plain language of section 6.14(d) of the PSA[8] also did not prohibit Defendant from seeking the additional servicing fee from

---

[7]Section 6.14(b) provides that "[a]s compensation therefor, the Master Servicer shall be entitled to receive all compensation payable to the Servicer under this Agreement, including the Servicing Fee." (D.E. No. 72-2, Pl.'s Exh. 2 at 90).

[8]Section 6.14(d) provides:

Notwithstanding the foregoing, the Master Servicer may, if it shall be unwilling to continue to so act, or shall, if it is unable to so act, request the Trustee to appoint, petition a court of competent jurisdiction to appoint, or appoint on its

Plaintiff.  *Id*. at 5-6.  This provision prohibited a successor servicer from seeking additional

compensation out of payments on mortgage loans and simply did not address the factual situation

at issue in this case.  *Id*.  Finally, the Court also ruled that section 6.14(a)[9] of the PSA did not

---

> own behalf any housing and home finance institution, bank or mortgage servicing
> institution having equity of not less than $25,000,000 and meeting such other
> standards for a successor master servicer as are set forth in this Agreement, as the
> successor to such Servicer in the assumption of all of the responsibilities, duties or
> liabilities of the Servicer hereunder.  Any entity designated by the Trustee or the
> Master Servicer as a successor servicer may be an Affiliate of the Trustee or the
> Master Servicer; *provided, however*, that, unless such Affiliate meets the net
> worth requirements and other standards set forth herein for a successor servicer,
> the Trustee or the Master Servicer, in its individual capacity shall agree, at the
> time of such designation, to be and remain liable to the Trust Fund for such
> Affiliate's actions and omissions in performing its duties hereunder.  In connection
> with such appointment and assumption, the Trustee or the Master Servicer may
> make such arrangements for the compensation of such successor out of payments
> on Mortgage Loans as it and such successor shall agree; *provided*, *however*, that
> no such compensation shall be in excess of that permitted to the Servicer
> hereunder.

(D.E. No. 72-2, Pl.'s Exh. 2 at 90).  The Court found that this provision "provides that if the
Master Servicer, in this case the Defendant, has a successor servicer appointed that this successor
servicer cannot seek compensation in excess of what the Servicer, in this case the Plaintiff,
sought out of payments on Mortgage Loans."  (D.E. No. 44 at 5-6).  The Court also found that "it
is undisputed in this case that Defendant's successor, its own Home Mortgage division, does not
seek the additional service fee out of payments on Mortgage Loans" but instead the Home
Mortgage division "invoices to Wells Fargo's Corporate Trust Services Division, which in turn
invoices Plaintiff for the additional fee."  *Id*. at 6.

[9]Section 6.14(a) provides in relevant part:

> On or after the receipt by the Servicer of any such written notice of termination,
> all authority and power of the Servicer, and only in its capacity as Servicer under
> this Agreement, whether with respect to the Mortgage Loans or otherwise, shall
> pass to and be vested in the Master Servicer; provided, however, the parties
> acknowledge that notwithstanding the preceding sentence there may be a
> transition period, not to exceed 90 days, in order to effect the transfer of the
> Servicing obligations to the Master Servicer.
>
> * * *
>
> The Servicer being terminated (or the Trust Fund, if the Servicer is unable to

limit Defendant from recovering costs only from the transfer of servicing during the 90-day

period and that costs associated with the transfer of servicing were not limited to specific items

listed in section 6.14(a) as examples of transfer costs pursuant to the *ejusdem generis* rule. *Id*. at

6-7. The jury was instructed as to these rulings. *See* (D.E. No. 69 at 10). The Court, however,

did not discuss or determine whether the additional servicing fees charged by Defendant were

appropriate transfer of servicing costs under section 6.14(a) of the PSA.

Evidence was presented at trial that Defendant argued from the beginning that its

additional servicing fees were properly characterized as a cost "associated with the transfer of

servicing" under section 6.14(a) of the PSA. *See* (D.E. No. 72-20, Pl.'s Exh. 26). At trial,

Plaintiff argued that Defendant breached the contract because by charging the additional

servicing fee it was not charging an actual transfer of servicing cost under the PSA but was

instead attempting to charge Plaintiff an arbitrary number and make a profit. (D.E. No. 78-4,

Trial Trans. at 10). The Court finds that the phrase in section 6.14(a) of the PSA providing that

the servicer (Plaintiff) must reimburse the master servicer (Defendant) "for all costs associated

---

> fulfill its obligations hereunder) as a result of a Servicing Termination Trigger
> Event shall bear all costs of a servicing transfer, including but not limited to those
> of the Master Servicer reasonably allocable to specific employees and overhead,
> legal fees and expenses, accounting and financial consulting fees and expenses,
> and costs of amending this Agreement, if necessary. The Master Servicer shall be
> entitled to be reimbursed by the Servicer (or by the Trust Fund, if the Servicer is
> unable to fulfill its obligations hereunder) for all costs associated with the transfer
> of servicing from the predecessor Servicer, including without limitation any costs
> or expenses associated with the complete transfer of all servicing data and
> the completion, correction, remodeling or manipulation of such servicing data as
> may be required by the Master Servicer to correct any errors or insufficiencies in
> the servicing data or otherwise to enable the Master Servicer to service the
> Mortgage Loans properly and effectively.

(D.E. No. 72-2, Pl.'s Exh. 2 at 88- 89).

with the transfer of servicing from the predecessor [s]ervicer" is ambiguous, its meaning was properly submitted to the jury, and that there was sufficient evidence in the record for the jury to find that the term did not encompass the additional servicing fee charged by Defendant.

The Court finds that the phrase at issue in section 6.14(a) is ambiguous because it is subject to more than one reasonable interpretation.  *See Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992) (applying New York law and stating that in determining ambiguity the Court must decided whether a "contract is susceptible to more than one reasonable reading.").  The phrase at issue provides in its entirety as follows:

> The Master Servicer shall be entitled to be reimbursed by the Servicer (or by the Trust Fund, if the Servicer is unable to fulfill its obligations hereunder) for all costs associated with the transfer of servicing from the predecessor Servicer, including without limitation any costs or expenses  associated  with  the  complete transfer  of  all  servicing  data  and  the  completion, correction, remodeling or manipulation of such servicing data as may be required by the Master Servicer to correct any errors or insufficiencies in the servicing data or otherwise to enable the Master Servicer  to service  the Mortgage  Loans  properly and  effectively.

(D.E. No. 72-2, Pl.'s Exh. 2 at 89).  The beginning part of the phrase is broad stating that Plaintiff is responsible for "all costs associated with the transfer of servicing."  This phrase, however, in and of itself is ambiguous as it is unclear what is meant by the term "transfer of servicing."  Does "transfer of servicing" mean simply the actual physical conveyance of information, data, or files, or does it encompass the less tangible transference of the title and responsibility of acting as the servicer?  Accordingly, are the costs associated with the "transfer of service" only those more tangible costs such as moving the data as set forth in more detail in the second part of the phrase which describes data completion and correction or is it any cost that the master servicer (Defendant) has had to incur because the title of servicer was transferred to it,

including the cost of servicing sub prime mortgage loans in a mortgage crisis.  The Court finds

both interpretations are reasonable, and thus, this portion of the PSA is ambiguous.

Accordingly, it was proper for the Court to admit, and the jury to consider the meaning of

these terms in the usage of trade.  *See Seiden Associates, Inc.*, 959 F.2d at 429 (stating that where

the language of a contract is ambiguous "extrinsic evidence may properly be considered in the

search for the contracting parties' intent.").  Plaintiff offered testimony from Mr. David

Piotrowski ("Piotrowski") who routinely works in the field of banking and who helped Plaintiff

and their counsel put together the PSA at issue in this case.  (D.E. No. 78-1, Trial Trans. at 114-

117).  Piotrowski testified that the PSA is "a fairly standard document used in the industry and

governs all of these transactions." *Id*. at 117.  The following exchange took place on direct

between Piotrowski and Plaintiff's counsel.

> Q.    Are you familiar with the term "standard" – is there a common
>       understanding relating to the term "transfer of servicing," as used in the
>       field of mortgage securitizations?
>
> A.    Yes.  The transfer servicing is very standard.
>
> Q.    What is the term  – how is the term commonly understood in your field?
>
> * * *[10]
> A.    Repeat the question again? Sorry.
>
> Q.    How is the term "transfer of servicing," what does "transfer of servicing"
>       mean in your field?
>
> * * *

---

[10]This question was objected to by defense, and the objection was overruled.  Defendant's
argument that Piotrowski should not have been permitted to testify at all are discussed in detail
below.

A.     The transfer of servicing is simply the act of moving the servicing of the mortgage loans from one party to the other.

In other words, the predecessor servicer, Yale, was collecting payments, making collection calls, initiating foreclosures.  They need to then transfer or move that duty from Yale to Wells Fargo.  And so – and that entails transferring all of the loan data, sending over the actual servicing files, the collector notes, giving them updates on where people are in their bankruptcies and in foreclosures, and basically just giving the data from one servicer to the other.

* * *

Q.     All right.  Let me ask you, then, sir, is there a commonly understood meaning of the term "cost of transfer of servicing" or "cost associated with transfer of servicing" in your field?

A.     It's the cost to move the servicing.  I mean, it's –the transfer of servicing is a one-time event.  I move the servicing from me to you, it's done.  It's the event.  And so whatever it costs for me to move the servicing from me to you, that's, that's the cost.  And the transfer's that one-time event.

*Id*. at 143-148.  Piotrowski also testified that "the expected cost of transferring the servicing would be between 50 and a hundred thousand dollars."  *Id*. at 149.  Piotrowski further testified that the expenses charged by Defendant for actual transfer were consistent with the common understanding of the term "cost of transfer of servicing" but that the charges for the additional servicing fee were not consistent.  *Id*. at 156.

Accordingly, the phrase "all costs associated with the transfer of servicing" in section 6.14(a) did not have a plain meaning in the contract as it was unclear what costs of transfer of servicing were and accordingly, it was appropriate for the jury to consider evidence regarding how such a term is used in trade.  The usage of trade evidence offered by Piotrowski properly supports a finding that the additional servicing fee being charged by Defendant was not an appropriate transfer of servicing cost under the PSA as contended by Defendant.  Accordingly,

-16-

the Court finds Defendant's argument is without merit, and that the jury's finding is properly supported by the evidence.

### 2.        Plaintiff's breach of the PSA

Next, Defendant argues that judgment as a matter of law should be entered in Defendant's favor or in the alternative a new trial should be granted because Plaintiff's breach of the PSA is a complete defense to its breach of the PSA.  At trial, the jury checked "YES" to the question "Do you find that Defendant has proved by a preponderance of the evidence that Plaintiff breached the contract between Plaintiff and that Defendant has incurred damages from this breach?"  (D.E. No. 71 at 2).  The jury next was instructed to "please specify the amount of damages that Defendant has shown by a preponderance of the evidence resulted from Plaintiff's breach of the contract between Plaintiff and Defendant."  *Id*.  The jury wrote "Ø" in the blank provided with a dollar sign.  Defendant argues that the jury essentially found that Plaintiff breached the contract and then refused to specify damages.  Defendant also argues that the "record evidence indisputably establishes . . . [its] damages resulting from . . . [Plaintiff's] breach" and Plaintiff failed to rebut this evidence.  (D.E. No. 77 at 14-15).  Defendant argues that their damages should be "equal to the amounts that the jury awarded to . . . [Plaintiff] as damages for . . . [Defendant's] supposed breach" because even if the additional servicing fee and costs were not properly deducted by Defendant "as costs of transferring servicing, these amounts constitute the damages that . . . [Defendant] incurred due to . . . [Plaintiff's] breach."  *Id*. at 15.  This Court disagrees.

It was undisputed that Plaintiff breached the PSA because it could not make further servicing advances, resulting in Plaintiff being terminated as servicer and Defendant assuming

the duties of replacement servicer.  (D.E. No. 43, Joint Pretrial Stipulation at 4-5).  Accordingly, the jury found that Plaintiff beached the PSA.  The jury also found that "Defendant incurred damages from this breach" but then found that Defendant did not show by a preponderance of the evidence that any damages "resulted from Plaintiff's breach of contract."  *See* (D.E. No. 71 at 2). The jury was certainly entitled to conclude that despite Defendant's arguments to the contrary the additional servicing fee charged by Defendant and the default and restructuring account manager fees were not recoverable damages from Plaintiff based on its breach of the contract.

Defendant charged Plaintiff an additional servicing fee for the increase in costs to service the existing loans under the PSA "taking into account current market conditions and the sub-prime nature of such mortgage loans."  (D.E. No. 72-20, Pl's Exh. 26). Under New York law, a nonbreaching party "may recover 'general' consequential contract damages which are the natural and probable consequence of the breach."  *Reads Co., LLC v. Katz*, 900 N.Y.S.2d 131, 133 (N.Y. App. Div. 2010).  "In order to recover 'special' or extraordinary contract damages that do not flow directly from the breach, however, a plaintiff is required to plead [or prove] that the damages were foreseeable and within the contemplation of the parties at the time the contract was made."  *Id*. at 134.  Here, there was sufficient evidence in the record for the jury to find that the additional servicing fee and related expenses were not general damages flowing naturally from the breach of the contract but instead that such damages were special damages that were not foreseeable by the parties when the contract was made.  *See* (D.E. No. 78-1, Trans. at 146-155 ) (where Piotrowski testified that these fees were not contemplated by the parties at the inception of the contract); (D.E. No. 78-1 at 202, 216-227) (where Gilbert Kahn, president of Yale Mortgage Corporation, testified that the additional servicing fees were not contemplated by the

parties at the time the contract was signed); *see also* (D.E. No. 78-2, Trans. at 52-63) (where

Steven Chaby, the Chief Financial Officer of Yale Mortgage Corporation, testified that he was

amazed that Defendant was charging these additional servicing fees).

In short, evidence was presented at trial that an unprecedented mortgage crisis took place

in 2008 after the PSA was signed in 2007.  (D.E. No. 72-2, Pl.'s Exh. 2); (D.E. No. 78-1, Trans.

at 135-137, 204-205).  Plaintiff defaulted on the PSA causing Defendant to take over servicing

the mortgage loans as master servicer as provided for in the agreement.  Defendant then

attempted to pass on the costs that it was incurring as master servicer now that the landscape had

changed and the mortgage crisis was a reality.  Plaintiff argued at trial, however, and presented

evidence to the effect that the additional costs that Defendant attempted to charge Plaintiff were

not damages contemplated by the parties when the contract was formed.  Accordingly, the Court

finds Defendant's arguments are without merit and that there was sufficient evidence to sustain

the jury's verdict.

### 3.    Testimony of Gilbert Kahn and David Piotrowski

Finally, Defendant argues that the Court erred in permitting Kahn to testify as to the

meaning of the PSA and erred in permitting Piotrowski to testify at all.  The Court finds these

arguments are without merit.

First, Defendant argues that the Court erred in permitting Kahn to testify as follows on

direct:

> Q.    The second item, did you ever learn how Wells Fargo was computing the servicing delta?
>
> A.    After many months, we were [sic].  It was pretty much was [sic] apparent what they were doing.

Q.      And what was that?  How – and that's what we see here, the item two, correct, the $62,000?

A.      Yeah.  It was apparent that they were adding another 50 basis points to the servicing fee and charging Yale for that on an ongoing basis.

Q.      Okay.  And your understanding, was that consistent with the PSA?

A.      No.

MR. NADER:[11]       Objection.  Objection, your Honor.

THE COURT:       What is the objection?

MR. NADER:       That your Honor made this the subject of a ruling on summary judgment.

THE COURT:       Well, honestly, I make a lot of rulings.  I don't remember that.  Do you concur that this has been covered by that?

MR. CROCKETT:[12]   No.

THE COURT:       Then let's discuss it.

* * *[13]

THE COURT:       Okay.  What is it that you're trying to elicit from this witness at this point?  Because it does sound like he's getting into something that we talked about.  What is your objection?

MR. NADER:       My objection is we moved for summary judgment,[14] your Honor issued a ruling saying that the 50 basis points on the limitation that they were arguing doesn't apply.  Because

---

[11]Mr. Nader is counsel for Defendant.

[12]Mr. Crockett is counsel for Plaintiff.

[13]The Court then went sidebar outside the presence of the jury to discuss the matter.

[14]The Court clarifies that Defendant actually never moved for summary judgment. Plaintiff filed a motion for partial summary judgment.

these basis points were for protection of payments on the mortgage loans and that this additional 50 basis points isn't–

THE COURT:        Okay.  Can you still hear, Francine?  You all right with that?

THE COURT REPORTER:   No, Judge, I can't hear.

THE COURT:        Yes, speak up.

LAW CLERK:        This is a summary of exactly what you ruled.  Your ruling was on specific provisions in the contract.

THE COURT:        Um-hum.  All right.  I'll permit the question, because I think it is admissible.  I did not rule–my ruling was not that limited, so I'll permit it.

*(The foregoing was at the bench out of the hearing of the jury.)*

THE COURT:        You may proceed, sir.

BY MR. CROCKETT:

Q.      Mr. Kahn, you were telling us that you learned that Wells Fargo was charging a half percent a month as a servicing delta.  The question was, was that consistent with your understanding of the PSA?

A.      No.

Q.      Why not?

A.      Because the PSA clearly stated that the servicing fee was 50 basis points.

(D.E. No. 78-1, Trans. at 223-225).  Defendant is arguing as it did at trial that the Court ruled on the issue that Kahn testified to in its order on summary judgment and that it was error for the Court to permit Kahn to testify.

As previously explained, the Court issued an order on Plaintiff's partial motion for summary judgment considering specific arguments relating to specific provisions of the PSA.

-21-

*See supra* section III(B)(1).  As stated above, the Court ruled based on Plaintiff's specific arguments that the plain language of sections 6.14(b) and 6.14(d) of the PSA did not address the factual situation at issue in this case and did prohibit Defendant's collection of an additional servicing fee.  (D.E. No. 44 at 5-6).  Finally, the Court also ruled that section 6.14(a) of the PSA did not limit Defendant from recovering costs only from the transfer of servicing during the 90-day period and that costs associated with the transfer of servicing were not limited to specific items listed in section 6.14(a) as examples of transfer costs pursuant to the *ejusdem generis* rule. *Id*. at 6-7.  The Court, however, did not rule on any other provisions of the contract nor did it, as discussed above, determine whether the additional fees charged by Defendant were appropriate transfer of servicing costs under the PSA.

Kahn did not reference a specific provision of the PSA in his testimony.  He stated only that he believed that Defendant's servicing fee was limited to "50 basis points."  This testimony does not directly conflict with this Court's ruling and to the extent it did conflict, the Court specifically instructed the jury as to its prior rulings on the motion for summary judgment and instructed the jury that it had to consider these rulings as a matter of law in their deliberations.  (D.E. No. 69 at 10).  Accordingly, the Court finds Defendant's arguments that Kahn's testimony warrants a new trial or judgment as a matter of law are without merit.

Next, Defendant argues that this Court erred in permitting the entirety of Piotrowski's testimony.  Specifically, Defendant argues that Piotrowski should not have been permitted to testify as to his understanding of the meaning of certain portions of the PSA because he was not a party to the PSA, nor was he an employee of either party, and he was not qualified as an expert.  Defendant specifically objects to Piotrowski's testimony regarding the usage in trade of the term

"cost of transfer of servicing."  This Court disagrees that it erred in permitting Piotrowski to testify.

Before trial, Defendant moved to preclude Piotrowski from testifying. (D.E. No. 52).  At trial, the Court ruled that based on Rule 701 of the Federal Rules of Evidence Piotrowski could testify as a lay witness and state what is common in the custom and trade. (D.E. No. 78-1, Trial Trans. at 111-112).  The Court finds this ruling was not in error.

Rule 701 of the Federal Rules of Evidence provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a)     rationally based on the witness's perception;

(b)     helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c)     not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Here, Piotrowski testified that he "worked with Yale Mortgage's legal counsel to basically help . . . put together the terms of . . . [the PSA].  (D.E. No. 78-1, Trans. at 117); *see also* (D.E. No. 78-1, Trans. at 158-159) (where Piotrowski clarifies that he provided advice to Plaintiff regarding the PSA before it was finalized).  Accordingly, Piotrowski was working with Plaintiff providing it advice with regard to the terms of the specific PSA at issue in this case before the PSA was finalized.

Thus, Piotrowski's testimony as to the usage in trade of certain terms used in the PSA is not specialized knowledge within the scope of 702 and is appropriate lay opinion testimony as it was rationally based on his own perception and helpful to determining a fact in issue i.e. the

intent of the parties in using the term "costs of transfer of servicing."  *See Dakota Minn. & E. R.R. Corp. v. Wis. & S. R.R. Corp.*, 657 F.3d 615, 619 (7th Cir. 2011) *(*stating that "[w]e are not suggesting that evidence of trade usage must take the form of expert evidence; any management-level employee of a business engaged in a particular trade should be familiar with the meaning of the words used in that trade, and thus fit the definition of a lay witness entitled to give opinion evidence.*")*; *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1216, 1223 (11th Cir. 2003) (finding where witnesses testified as to "charges and time required to complete . . . repairs" that "the testimony offered by Tampa Bay's employees and/or officers was of a type traditionally and properly considered lay witness testimony, as it was not based on specialized knowledge subject to Rule 702."); *W. Indus. v. Newcor Canada, Ltd.*, 739 F.2d 1198, 1203 (7th Cir. 1984) (finding that it was appropriate for "experienced executives in the trade" to testify as to "the custom of the specialty welding machine trade not to give disappointed buyers consequential damages"); *see also* Fed. R. Evid. 701 advisory committee's note, 2000 Amendments (stating that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant appraiser, or similar expert" and that "courts have permitted lay witnesses to testify that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established.").  Thus, the Court finds Defendant's arguments are without merit.  It is hereby:

    **ORDERED AND ADJUDGED** that

    1.    Plaintiff's Consolidated Post-Trial Motion (D.E. No. 79) is **GRANTED in part and DENIED in part**.  The motion is granted in that the Court shall enter a final judgment as to

costs in Plaintiff's favor in the amount of $2587.10.  The motion is denied in all other respects.

     2.    Defendant Wells Fargo's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial (D.E. No. 77) is **DENIED**.

     DONE AND ORDERED in Chambers at Miami, Florida, this 20 day of August, 2012.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge McAliley
All Counsel of Record